UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | No. 6:10-CR-15-GFVT-HAI-1 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| ELLIS KIRBY, | ) ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 74 at 2), the Court considers reported violations of supervised release conditions by Defendant Ellis Kirby. Judge Van Tatenhove entered a judgment against Defendant in December 2010, upon a guilty plea to one count of distributing pills containing oxycodone and one count of possessing a firearm in furtherance of a drug trafficking offense. D.E. 55 at 1. Defendant was sentenced to a total term of 90 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. In August 2015, Defendant's sentence on the firearm charge was reduced, by operation of a retroactive Guidelines amendment, to 84 months. D.E. 71.

## I.

Defendant was released on June 3, 2016. In October 2017, the United States Probation Office ("USPO") reported that Defendant had been arrested on or about July 14, 2017, for being intoxicated in a public place. D.E. 73. Defendant was found to be a passenger in a vehicle driven by his cousin, who was arrested for DUI. *Id*. The report also indicated that Defendant failed to notify the USPO of the arrest. *Id*. Defendant also failed to notify his probation officer of a controlled substance prescription, as required by his conditions. At the USPO's request, the

Court modified Defendant's conditions to include service of one weekend of intermittent confinement. *Id*.

On April 20, 2018, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report, during a home visit, the probation officer inspected Defendant's medications. Defendant's hydrocodone bottle had only two tablets remaining. According to the prescription, there should have been eight. Defendant stated that he had taken a tablet the night before. However, a contemporaneous urine specimen returned negative results for opiates.

Based on these facts, Violation #1 charges a violation of the condition that requires Defendant to, among other things, not use any controlled substance "except as prescribed by a physician." Failing to take hydrocodone as prescribed is a Grade C Violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on May 9, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 78. The United States moved for interim detention; Defendant argued for release. *Id.* The Court found that Defendant met his burden under 18 U.S.C. § 3143(a) and Rule 32.1(a)(6), and denied the motion for detention. *Id*.

At the final hearing on May 22, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 79. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violation. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the key factual basis for the violation. Specifically, he admitted taking hydrocodone more frequently than prescribed (more than one every six hours), thus producing the shortage of pills noticed by the probation officer. Defendant still maintained that he had taken a pill the day before his negative urine test, and could not account for the negative opiate result. Nevertheless,

his admission that he failed to strictly follow the prescription instructions is sufficient to establish a violation of Standard Condition #7. The United States thus established the violation under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.

Defendant pleaded guilty to the Class C felony of distributing pills containing oxycodone and the Class A felony of possessing a firearm in furtherance of the drug trafficking offense. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1). Section 3583(e)(3) provides a maximum period of incarceration (upon revocation) of two years on the drug conviction and five years on the firearm conviction.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Under 18 U.S.C. § 3583(h) and 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be reimposed on the drug distribution conviction. Otherwise, section 3583(h) would provide a five-year maximum term on the firearm charge.

The bottom line is that his current statutory maximum imprisonment term is five years, with no limit to the supervised release that may be reimposed.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation. Given Defendant's criminal history category of I (the category at the time of the conviction) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is three to nine months.

### III.

At the final hearing, the parties argued for different penalties. The United States urged the Court to revoke and impose a sentence of six months of imprisonment, followed by three years of supervised release. The defense requested that Defendant's release not be revoked, but that the Court impose an additional year of supervision.

Before the parties addressed their sentencing recommendations, Defendant called Donna Sue Denney as a witness. According to her testimony, Defendant and Ms. Denney "grew up together." They now live in the same house (with four other people), and Ms. Denney moved in in November 2017. Defendant suffers severe arthritis, and Ms. Denney helps him with his physical limitations, including driving him whenever he needs to leave the house. The heart of Ms. Denney's testimony was that she had never seen Defendant selling or giving away any of his medications. She said she does not know what medications Defendant takes, but she knows he keeps them in a locked box in his bedroom. The defense explained that Ms. Denney's testimony was meant to forestall any attempt by the government to argue that Defendant had been diverting his pills rather than taking them himself.

The government essentially argued that the single charged violation understated Defendant's poor performance while on supervision. Although this was the USPO's first requested revocation, Defendant previously was found to have been arrested for public intoxication. He failed to report that arrest, and he also failed to report a new controlled substance prescription. Here, again, Defendant was not handling his prescription medication in strict compliance with his release conditions. And any issue with Defendant's pain pills is a major concern when Defendant's underlying conviction is for distributing pain pills. Defendant also received a lenient consequence of weekend confinement for his prior failures to comply.

Stated differently, the government argued that it is a major breach of the Court's trust for a person convicted of opioid distribution to be unable to account for several pills. This breach of trust, the government argued, warranted imprisonment, even though it is not among the worst violations. The government noted that Defendant stipulated to the current violation. Defendant was also compliant for approximately a year before his intoxication arrest.

The defense stressed how revocation was not mandatory in this case. Because the current violation was not terribly severe (merely taking pills more rapidly than described), the defense argued that a lengthened supervision term would be adequate to get Defendant's attention. Adding a year of supervision would lengthen the period to June 2020. The defense was "not opposed" to further lengthening of the supervision period if it enabled Defendant to avoid revocation. In the event of revocation, the defense requested that Defendant be placed on home confinement (pursuant to USSG § 7B1.3(c)(1)(B)) on account of his severe arthritis and other health issues.

Defendant declined to make a statement to the Court.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction are quite serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The firearm charge was a Class A felony, and Defendant was keeping a shotgun on the mantle at his residence, where he was selling oxycodone pills. He told an informant he had pointed the gun at someone in the past. He further threatened to "sniper" a state trooper if given the opportunity.

Concerning his history and characteristics, although his criminal history is minimal, the element of dangerousness in Defendant's underlying charges cannot be ignored. Defendant's advanced age and health problems make this a challenging case. But his history on supervision includes prior lack of candor with the probation officer. And his prior sentence of one weekend of confinement was not enough to prompt strict compliance with his terms of release.

The sentencing factor that concerns education and treatment does not appear applicable in this case. Defendant holds a valid prescription for pain medicine to treat his arthritis—he just needs to follow it strictly from now on.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a

sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, although this is not Defendant's first problem while on supervision, it is a relatively minor violation. The government did not offer evidence that he diverted his medication. Rather, he took his pain pills more quickly than prescribed and ended up with two in the bottle when he should have had eight. Given Defendant's history, his conduct is serious enough to warrant a period of incarceration, but not serious enough to warrant a Guidelines sentence.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a downward departure. When departing from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)). As just described, the violation conduct was relatively minor. Defendant merely overused a legitimately prescribed pain medication for his arthritis. The government's recommendations thus appears too harsh. On the other hand, the defense's recommendation is too lenient. Merely extending the period of supervision or imposing home detention would keep Defendant in the same environment and maintain the status quo. The Court needs to send a strong signal that Defendant must strictly comply with his conditions, and a brief term of incarceration should be adequate to do so.

The Court finds a sentence of one month of imprisonment to be sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court will also recommend that Defendant, upon release, be subject to three years of supervision—the same length that was imposed upon conviction. No new conditions are necessary.

Defendant is currently on release. As discussed at the final hearing, the undersigned will recommend that, if the District Judge revokes his release, Defendant should be ordered to self-report approximately two weeks after any objections are resolved and judgment is entered.

**V.**

Based on the foregoing, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of the violation.

(2) Revocation with a term of imprisonment of one month, followed by a 36-month term of supervised release. If the District Judge revokes his release, Defendant should be ordered to self-report approximately two weeks after any objections are resolved and judgment is entered.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for

consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23rd day of May, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge